Frank SINATRA, Plaintiff–Appellee,

v.

NATIONAL ENQUIRER, INC., et al., Defendant,

and

Clinic La Prairie, S.A., Defendant–Appellant.

No. 86–6527.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1987.

Decided Aug. 23, 1988.

Patricia A. Beaman, Mayer, Brown & Platt, Los Angeles, Cal., for defendant-appellant.

John A. Lawrence, Rudin, Richman & Appel, Beverly Hills, Cal., for plaintiff-appellee.

Before ALARCON and NELSON, Circuit Judges, and MUECKE,* District Judge.

NELSON, Circuit Judge:

Appellee Frank Sinatra brought an action under Cal.Civ.Code § 3344 (1987 Supp.)[1] against Clinic La Prairie, S.A. ("Clinic") over statements made by the Clinic's employees that were published in a national tabloid. Clinic employees, when interviewed in Switzerland by reporters for the magazine, The National Enquirer, falsely stated that Sinatra visited and was given youth regeneration treatments at the Clinic. The Clinic unsuccessfully entered a special appearance to challenge the district court's assertion of in personam jurisdiction over it. The Clinic renews its jurisdictional challenge on appeal from a judgment for Sinatra.

The question on appeal involves whether statements made by employees of a Swiss clinic to a Florida corporation's reporter about a California resident, which are the foundation for an article published in a nationally circulated magazine, are sufficient minimum contacts to establish personal jurisdiction in California. This appeal involves the interaction between the "effects" reasoning of *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and the reasonableness focus in *Asahi Metal Industries v. Superior Court of Solano County*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). What we are required to determine is whether (1) the solicitation of business in California combined with (2) the unauthorized use of another's name in order to promote that business and (3) knowledge that such use will injure a California plaintiff in California constitute sufficient minimum contacts to establish purposeful direction.

The facts establish that the Clinic concocted this false story as part of its continuing effort to solicit clients through the use of American media and advertising. We view the misappropriation of Sinatra's name as one component of a series of ongoing efforts by the defendant to avail itself of the benefits of the California market. The defendant, although lacking complete control over dissemination, intentionally used another's name for the defendant's commercial benefit. We hold that the Clinic's cumulative contacts with California make the exercise of jurisdiction by the California courts reasonable under the Due Process Clause of the Fourteenth Amendment. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839–41 (9th Cir.

---

* The Honorable C.A. Muecke, United States Senior District Judge for the District of Arizona, sitting by designation.

1. Section 3344 states in part: "Any person who knowingly uses another's name, voice, signature, photograph or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising, selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent ... shall be liable for any damages sustained by the person or persons injured as a result thereof."

1986). We therefore affirm the district court's exercise of jurisdiction over the Clinic.

## BACKGROUND

Frank Sinatra is a well-known entertainer in the recording, television, and motion picture industries, who resides in California. The Clinic is a Swiss corporation, operating a medical clinic in Montreux, Switzerland. The Clinic has operated an information and reservation center in Kansas City, Missouri since 1976. Richard Van Vrooman set up the information center, represented the Clinic in the United States, and handled all reservations in the United States. Van Vrooman also coordinated the Clinic's extensive North American advertising efforts in which advertising was placed in various periodicals of national circulation.[2] Van Vrooman was the Clinic's sole representative in North America. The Clinic contests these facts and contends that it merely entered into a contract with New Life, a Missouri corporation, located solely in Missouri, to provide information to persons in the United States through a toll-free or "800" telephone number. According to the Clinic, Van Vrooman is the owner of New Life; the Clinic does not own or control any part of New Life; and no owner, employee, or officer of New Life is an owner, employee or officer of the Clinic.

On September 27, 1984, representatives of the Enquirer contacted the Clinic inquiring about an alleged visit by Sinatra. The Clinic referred the representatives to Van Vrooman. After speaking to an Enquirer editor, Van Vrooman informed the Clinic that if the Clinic would allow the Enquirer to print a statement that when the Clinic was asked if Sinatra had been a patient, the Clinic refused to confirm or deny the statement, then the Enquirer would send an editor to Switzerland to do a full feature on the Clinic. Van Vrooman also informed the Clinic of the Enquirer's circulation, its general readership, and of the fact that the Clinic could successfully solicit clients through an article published in the magazine. At the request of the Clinic's director, Van Vrooman attempted to contact Sinatra in California in order to solicit him to come to the Clinic.

In early October of 1984, an Enquirer reporter traveled to Switzerland. The president, chief of medicine, director, and other members of the Clinic met with the reporter and made several false statements concerning Sinatra's alleged stay at the Clinic, including details of their personal contact with him. Sinatra never visited the Clinic, nor did he receive any treatment from the Clinic.

The National Enquirer, on the cover of its October 23, 1984 issue, published a photograph of Sinatra with the headline, "Sinatra Injected with Youth Serum—He's Secretly Treated with Sheep Cells at Swiss Clinic" on the front page. The article falsely stated that Sinatra had been admitted to the Clinic where he had received a youth regeneration treatment that included an injection with "live cells from black sheep fetuses." After publication, Van Vrooman telexed the Clinic stating that the article was positive, and that the wording of the article "protects the Clinic."

Sinatra originally brought suit against the Clinic and the National Enquirer in California Superior Court for misappropriation of name, likeness, and photograph. The action was removed to federal district court based on diversity between the parties. Sinatra then settled with the Enquirer and voluntarily dismissed the Enquirer as a defendant. During the litigation, the Clinic moved to sever the jurisdictional is-

---

**2.** The Clinic primarily advertised its cosmetics and health products lines in North American publications. The Clinic sold these product lines in January, 1983 to a subsidiary of American–Cynamid, and licensed the Clinic's name for use in conjunction with the products. *See* Van Vrooman deposition, at 192. No evidence was presented at trial that established that any cosmetic ads were placed by the Clinic after 1983. However, Sinatra submitted evidence that after 1983 advertising for these health and beauty products also contained numerous references to the Clinic's treatments and to the Clinic's toll-free number in the United States. The advertisements indicated that reservations for the Clinic could be made by calling the number listed.

sue in order to avoid forfeiting its jurisdictional defense under Swiss law. The district court denied the Clinic's motion to dismiss for lack of jurisdiction. The Clinic petitioned this Court for review of the district court's denial of the motion to dismiss on April 23, 1986. This Court required Sinatra to file an answer, but refused to stay the district court proceedings during the pendency of the interlocutory appeal. The district court also denied the Clinic's motion to stay proceedings pending the outcome of this Court's review of the district court's exercise of jurisdiction over the Clinic.

The Clinic moved to sever the jurisdictional issue from the remaining issues at the beginning of trial on September 16, 1986. The district court denied the motion. The Clinic then withdrew from the courtroom and refused to participate because, by participating in a trial on the merits, it could be held to have waived its defense of lack of personal jurisdiction under Swiss law.[3] At trial, Sinatra presented expert testimony concerning the value of the unlicensed use of his name. Sinatra also submitted deposition testimony and documentary exhibits as to the contacts between the Clinic, Van Vrooman and the Enquirer, and concerning the Clinic's and Van Vrooman's business activities in the United States. These materials were deemed admitted by the Clinic's refusal to respond to requests for admissions. At the conclusion of Sinatra's case and argument, the district court entered judgment in Sinatra's favor, awarding $350,000 in compensatory damages and $100,000 in punitive damages. This court eventually held that the Clinic's initial interlocutory appeal was mooted by the trial.

## DISCUSSION

■ The district court's determination that personal jurisdiction can be properly exercised is a question of law, reviewed by this court de novo. *Decker*, 805 F.2d at 838. When a defendant challenges the suf-

ficiency of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir.1984), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985). Because this case proceeded to trial, the plaintiff is put to the full burden of proof and must establish the jurisdictional facts by a preponderance of the evidence. *Forsythe v. Overmyer*, 576 F.2d 779, 781 (9th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978); *see also Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1286, n. 2 (9th Cir. 1977).

■ In a diversity case, the court must first inquire whether the assertion of jurisdiction satisfies California state law as well as due process requirements. *Corporate Investment Business Brokers v. Melcher*, 824 F.2d 786, 787 (9th Cir.1987); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986). Since California law confers jurisdiction coextensive with due process, this court need only analyze whether the exercise of jurisdiction comports with due process. *FDIC v. British–American Ins. Co. Ltd.*, 828 F.2d 1439, 1441 (9th Cir.1987); *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986); *see* Cal.Code Civ.Proc. § 410.10 (West 1973).

■ The due process clause of the Fourteenth Amendment requires that the defendant must have minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Data Disc*, 557 F.2d at 1287. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Sinatra does not contend, and it is clear, that the Clinic did not have "substantial" or "continuous and systematic" contacts with California to support the exercise of general jurisdiction. *See Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1477 (9th Cir.1986). *See*

---

3. This was the asserted basis for the Clinic's nonparticipation in the trial. We do not express an opinion whether the operation of Swiss law

actually results in the waiver of jurisdictional defenses.

*also, Heliocopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 9, 104 S.Ct. 1868, 1872 & n. 9, 80 L.Ed.2d 404 (1984). Therefore, the issue before this court is whether the district court properly asserted "limited" or "specific" jurisdiction for a cause of action arising out of the Clinic's forum-related activities. *FDIC,* 828 F.2d at 1442; *Hirsch,* 800 F.2d at 1477.

■ This circuit applies a three-part test to evaluate whether a court may exercise specific jurisdiction:

1. The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

2. The claim must be one which arises out of or results from the defendant's forum-related activities.

3. Exercise of jurisdiction must be reasonable.

Decker, 805 F.2d at 839.

Under the three-part test, the plaintiff must show that the Clinic's contacts with California have a basis in " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Asahi,* 107 S.Ct. at 1031 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). To satisfy the minimum contacts requirement, the court examines whether the Clinic acted affirmatively to promote or transact business in California. *See Decker,* 805 F.2d at 840. A lesser showing of minimum contacts may still warrant the exercise of jurisdiction upon a showing of reasonableness. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184. Once minimum contacts is shown, a rebuttable presumption arises that the exercise of jurisdiction is reasonable. *Haisten,* 784 F.2d at 1397. The defendant bears the burden of ulti-

mately proving that the exercise of jurisdiction is unreasonable. *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85. We now turn to an examination of each prong of the test.

I. *Purposeful Availment through Forum–Related Activities.*

■ Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff. *Asahi,* 107 S.Ct. at 1030; *Decker,* 805 F.2d at 840. In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state. *Id.* For example, the solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment. *Decker,* 805 F.2d at 840. Moreover, the decisions of this court have interpreted the holdings of *Calder* and *Burger King* as modifying the purposeful availment rubric to allow "the exercise of jurisdiction over a defendant whose only 'contact' with the forum is the 'purposeful direction' of a *foreign* act having *effect* in the forum state." *Haisten,* 784 F.2d at 1397 (emphasis in original).

In this case, the Clinic has directed its activities at California by using Sinatra's name in an effort to promote its business. The Swiss acts or directions that had a California effect consist of: (1) the misappropriation of the value of Sinatra's name through interviews conducted in Switzerland between Clinic employees and Enquirer reporters, in which the Clinic supplied false information about Sinatra's treatment at the Clinic; (2) the Clinic's California advertising efforts to attract patients; and (3) the Clinic's knowledge of Sinatra's residence in California.[4] In addition, California is the situs of Sinatra's injury.

---

**4.** The Clinic disputes the district court's finding that it had knowledge of Sinatra's residence. The following analysis presumes that the Clinic possessed this knowledge, because, as discussed below, the district court's finding is supported by evidence presented at trial and was not clear error.

After the Enquirer initially contacted the Clinic, an editor of the tabloid talked with Van Vrooman, the United States agent for the Clinic. Van Vrooman then told the Clinic that the Enquirer would do a feature article on the Clinic who, when asked, would neither confirm nor deny the statement that Sinatra had been a patient. Van Vrooman also told the Clinic about the Enquirer's circulation, its general readership, and of the fact that the Clinic could successfully solicit clients through an article published in the magazine. The Clinic treated many California residents and Van Vrooman's deposition establishes that a significant percentage of the Clinic's United States clientele are California residents. Van Vrooman then arranged for a reporter to travel to the Clinic for an investigation and interviews.

In *Calder*, the Supreme Court held that California could exercise jurisdiction over the defendants because of the California effects of their conduct in Florida. To reach this holding, the Court determined that "California is the focal point both of the story and of the harm suffered." 465 U.S. at 789, 104 S.Ct. at 1486. The article "concerned the California activities of a California resident." *Id.* at 788, 104 S.Ct. at 1486. The Court also determined that the defendants' sources for the article were from California, and that the plaintiff's career centered around California.

Here differences exist because the focus of the article involves Sinatra's alleged activities in Switzerland and the interview for the article took place in Switzerland. Although the defendants in *Calder* wrote and edited the article at issue, the Clinic's employees fabricated an elaborate story calculated to link Sinatra's name with their services. The Clinic's employees were encouraged to discuss their "personal" recollec-

tions and the allegedly embarrassing private details of Sinatra's treatments in order to obtain media coverage for the Clinic's treatments. Clearly, the Clinic discussed with Van Vrooman the expected commercial benefits of conducting an interview with the Enquirer. The Swiss Clinic knew of the extent of the Enquirer's circulation and the nature of the readership, and it recognized the economic value of the implied endorsement. The Clinic viewed the article as essentially a free advertisement that could reach between five million and twenty million people in its target market.

Thus, we must consider the economic reality of the defendant's activities that form the basis for the assertion of jurisdiction. *Haisten*, 784 F.2d at 1398. The Supreme Court's decision in *Asahi* affirms the purposeful direction standard, but also scrutinizes the quality and quantity of the defendant's acts directed toward the forum. There the Court focused on the extent of control exercised by Asahi Metals, a Japanese tire valve manufacturer based in Japan with no direct contacts to California. "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.*" *Asahi*, 107 S.Ct. at 1033 (citations omitted) [5].

The Clinic participates in conduct "which allows or promotes the transaction of business within the forum state." *Decker*, 805 F.2d at 840. The Clinic mounted significant advertising efforts in California by placing ads in San Diego Magazine, Town & Country, the Wall Street Journal, and elsewhere. The Supreme Court, in defining the nature of the "substantial connection," *Burger King*, 471 U.S. at 475, 105

**5.** The Supreme Court issued two plurality opinions, both holding that jurisdiction over a foreign component parts manufacturer in a California indemnity action was unreasonable. However, the opinions diverged as to the use of stream of commerce analysis. In Part II–A, Justice O'Connor argues that minimum contacts must be based on an affirmative act of the defendant rather than on the placement of goods into the stream of commerce. 107 S.Ct.

at 1031–32. Justice Brennan states that the stream of commerce theory incorporates the purposeful acts of a defendant in directing goods into the stream of commerce, from which the defendant derives economic benefit. 107 S.Ct. at 1035–36 (concurring in part and in the judgment). Under either standard for evaluating purposeful direction, the Clinic's actions establish affirmative direction of its statements and advertising into California.

S.Ct. at 2184, which must exist "between the defendant, the forum, and the litigation," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), listed several factors which indicate purposeful direction. "Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, advertising in the forum State, establishing channels of communication for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to act as the sales agent in the forum State." *Asahi,* 107 S.Ct. at 1033 (O'Connor, J., plurality opinion). The Court relied on the absence of any business solicitation or promotional conduct to determine that, on the facts of *Asahi,* the exertion of personal jurisdiction was unreasonable. *Id.* Asahi Metals was aware that the valves it sold to the tire manufacturer were incorporated into tires sold in California. Four members of the Court agreed that clear awareness of the product entry into and use in California coupled with the economic benefit derived by Asahi Metals from the California sales were insufficient actions to establish the requisite purposeful direction into California. *Asahi,* 107 S.Ct. at 1034.

Here, the misappropriation is properly viewed as an event within a sequence of activities designed to use California markets for the defendant's benefit. The Clinic instructed Van Vrooman to advertise and approved the ads placed. By use of a toll-free telephone number, California customers were given access to information, advice, and reservations concerning the Swiss Clinic. Clearly the Clinic was more than merely aware that its services were known to or used by California clients. In effect, the Clinic created, controlled, and actively used the reservation and advertising system that brought customers from the United States to Switzerland. *Cf. Asahi,* 107 S.Ct. at 1033.

Given the Clinic's commercial activity in the forum state, it should have reasonably anticipated being brought into court in California. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In addition, the Clinic's acts in Switzerland clearly had a tortious effect in California. *See Cole v. Doe,* 77 Mich.App. 138, 258 N.W.2d 165 (Ill.1977) (California conversation about Michigan resident between California publicist and national columnist provided basis for Michigan jurisdiction after publication in Michigan paper).

Moreover, an essential element of the tort of misappropriation is the celebrity's right to control the use of the publicity value of his or her name as she or he sees fit. *Eastwood v. Superior Court,* 198 Cal. Rptr. 342, 348–49, 149 Cal.App.3d 409, 417–18 (Cal.App.1983). Thus, the nature of the injury—using Sinatra's name without compensation and potentially diluting the commercial value of the name—produces a situs of the injury in California. Sinatra conducts his business from California, he licenses his name in California, and the center of his business is in California. The Clinic intentionally tried to benefit from the use of Sinatra's name in order to attract clients. The Clinic, through its affirmative and knowing actions, tried to promote its services, which are used by a significant number of California residents, by misappropriating Sinatra's name in a publication that received a majority of its sales from California. *See Calder,* 465 U.S. at 785, 104 S.Ct. at 1484.

An analogy can be drawn between the intentional nature of the tort here and other torts in which a defendant's activity causes harm without physical contacts. In *Blue Ridge Bank v. Veribanc, Inc.,* 755 F.2d 371 (4th Cir.1985), the Fourth Circuit held that a non-resident corporation was subject to jurisdiction in Virginia in a suit brought by a Virginia resident for defamation. The corporate defendant allegedly supplied libelous material to a syndicated columnist. The court held that personal jurisdiction over the corporation was justified because the corporation supplied the information on the condition that it receive credit in the article, the information was supplied with the expectation that the defendant would receive new business, and the defendant should have foreseen being

brought into court in any forum in which the article appeared. *Id.* at 374.

A district court in this circuit relied on *Blue Ridge* to exercise jurisdiction over a non-resident corporation for false statements made to third persons outside of California concerning a resident California corporation. *California Software Inc. v. Reliability Research*, 631 F.Supp. 1356, 1362 (C.D.Cal.1986). The court found that the statements were expressly calculated to cause injury in California, the defendants knew the plaintiff would feel the injury in California, and the defendants expected to benefit directly from the statements. The Clinic is in a similar position and acted with a similar intent in this case. Therefore, we adopt the reasoning of the district court in *California Software* to allow the exercise of jurisdiction.[6]

Therefore, we conclude that the Clinic, through its pursuit of California clients by advertising, part of which involved the misappropriation of Sinatra's name in order to benefit the Clinic through the implied endorsement, possessed sufficient minimum contacts with California to justify the district court's exercise of jurisdiction over it. *Cf. Lake v. Lake*, 817 F.2d 1416 at 1423

(9th Cir.1987) (jurisdiction in Idaho proper when a California attorney obtained a California custody order for a California mother, knowing that the court order would be used in Idaho courts to obtain custody from an Idaho father).[7]

## II. *Reasonableness.*

■ Reasonableness is considered as a separate factor in determining the existence of limited personal jurisdiction. *Melcher*, 824 F.2d at 790. However, the Clinic must overcome the presumption that the exercise of jurisdiction is reasonable because "it has been shown that the defendant purposefully availed himself of the forum's benefits." *Melcher*, 824 F.2d at 790. The burden thus shifts to the defendant to present a compelling case that jurisdiction would be unreasonable. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184.

■ The court examines seven factors to determine reasonableness: the extent of purposeful interjection; the burden on the defendant; the extent of conflict with sovereignty of the defendant's state; the forum state's interest in adjudicating the suit; the most efficient judicial resolution of the dispute; the convenience and effec-

**6.** In *Benally v. Hundred Arrows Press, Inc.*, 614 F.Supp. 969 (D.N.M.1985), the district court refused to extend jurisdiction, based on the misappropriation of likeness, over a non-resident museum. In *Benally*, the museum had released a photograph for publication. The museum's actions in releasing the photograph were "mere untargeted tortious conduct." *Id.* at 975. The distribution was not aimed at the forum state, New Mexico, because the museum knew that the magazines containing the photograph would have multi-state circulation. The court relied on the fact that the Museum was not a "primary participant in the publication of the photograph, but simply a supplier of information." *Id.* at 976.

*Benally* is distinguishable on its facts. In *Benally*, the photographer had first allowed the photographs to be distributed in 1932; the Museum obtained the photographer's collection in 1979, including the photograph at issue; the Museum continued to grant requests for reprints of the photograph. The plaintiffs first sued in 1984. Between the time of the distribution and the time of suit, dozens of entities had used and reprinted the photograph, and the Museum had effectively lost primary control over its use and publication. Here, the Clinic re-

tained control over the information provided to the Enquirer reporter. Indeed, the information would never have been published were it not for the Clinic's active campaign to use Sinatra's name for its commercial purposes. Thus, the nature of control over dissemination of information is different here from the control over dissemination of the photograph in *Benally*.

**7.** In *Lake*, the court held that the attorney took affirmative actions "'for the very purpose of having their consequences felt in forum state.'" *Id.* (quoting *Wright v. Yackley*, 459 F.2d 287, 290 (9th Cir.1972)). Judge Wright emphasized, however, that jurisdiction could only be asserted once the plaintiff proved that the attorney knew that the order would be used in Idaho and then that the attorney continued to take such action. 817 F.2d at 1423. Here, the district court found that the Clinic knew that the Enquirer was a magazine of national circulation with a large circulation in California, the residence of many of the Clinic's clients. *Accord Wallace v. Herron*, 778 F.2d 391 (7th Cir.) (Indiana had no personal jurisdiction over California attorneys sued by Indiana resident for malicious prosecution of a lawsuit in California), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1985).

tiveness of relief for the plaintiff; and the existence of an alternative forum. *Id.; Lake,* 817 F.2d at 1422. The application of these factors is not mechanical. *Hirsch,* 800 F.2d at 1481. In determining whether the exercise of personal jurisdiction reasonable, the court must balance the seven factors. *FDIC,* 828 F.2d at 1442; *Olsen by Sheldon v. Government of Mexico,* 729 F.2d 641, 649 (9th Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984).

### Extent of Purposeful Interjection

■ The factor of purposeful interjection is analogous to the purposeful direction analysis discussed above. *See Haisten,* 784 F.2d at 1401; *Melcher,* 824 F.2d at 790 ("Ninth Circuit cases give the 'purposeful interjectment' factor no weight once it is shown that the defendant purposefully directed its activities to the forum state"). Because we have determined that the Clinic purposefully directed its activities toward California residents, we cannot conclude that it did not deliberately avail itself of the benefits of California laws or markets for its services. *See Hirsch,* 800 F.2d at 1481.

### Burden on the Defendant

"We examine the burden on the defendant in light of the corresponding burden on the plaintiff." *Brand v. Menlove Dodge,* 796 F.2d 1070 at 1075 (9th Cir.1986). It presents as much of a burden for Sinatra to litigate in Switzerland as it does for the Clinic to litigate in California. The Supreme Court recently reiterated its concern with the burdens of defending a suit in a foreign country. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi,* 107 S.Ct. at 1034; *see also Gates Learjet Corp. v. Jensen,* 743 F.2d 1325 (9th Cir. 1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985); *Rocke v. Canadian Automobile Sport Club,* 660 F.2d 395, 399 (9th Cir.1981) (burden on Quebec company to defend suit in California, though not insurmountable, was substan-

tial and should be given weight to militate against the assertion of jurisdiction in California).

However, modern advances in communications and transportation have significantly reduced the burden of litigating in another country. *Melcher,* 824 F.2d at 791; *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1271 (9th Cir. 1981). The continuing contacts between the Clinic's United States-based agent and California translate into less of a litigation burden than if the Clinic maintained no physical presence or agent within the United States. Moreover, because the Supreme Court has preferred nonjurisdictional methods of lessening the inconvenience faced by defendants, we decline to hold that the burden on the Clinic is so great as to constitute a deprivation of due process. *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85; *McGee v. International Life Ins. Co.,* 355 U.S. 220, 224, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

### Conflict with Sovereignty of the Defendant's State

The factor of conflict with the sovereignty of the defendant's state "is not dispositive because, if given controlling weight, it would always prevent suit against a foreign national in a United States court." *Gates Learjet,* 743 F.2d at 1333. The Supreme Court, though, has cautioned against extending state long arm statutes in an international context. " 'Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' " *Asahi,* 107 S.Ct. at 1035 (quoting *United States v. First National City Bank,* 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)). This circuit has also stated that litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist. *FDIC,* 828 F.2d at 1444 (California jurisdiction over foreign defendant unreasonable although an employee of a foreign defendant's subsidiary signed the contract and deposited money in California); *Pacific Atlantic Trading Co.*

*v. M/V Main Express,* 758 F.2d 1325, 1330 (9th Cir.1985).

In *FDIC,* the defendant foreign corporation maintained no officer, affiliate, or subsidiary in the United States. While the vice-president of the subsidiary happened to be in California on unrelated business when asked by the parent corporation to accept a check consummating the transaction at issue, the isolated participation by the subsidiary was an insufficient ground on which to base jurisdiction. In *Asahi,* the Court found the exercise of jurisdiction unreasonable in part because the tire manufacturer did not operate as Asahi's agent or subsidiary—Asahi exercised little control over the marketing decisions or day-to-day activities of the manufacturer doing business in California. By contrast, Van Vrooman operated as the Clinic's agent in the United States. Van Vrooman actively solicited business in California and considered California one of the Clinic's best sources of American clients. In both *FDIC* and *Asahi* the control over California transactions was more attenuated than the control exerted by the Clinic over Van Vrooman or Van Vrooman's activities with California on the Clinic's behalf.

Therefore, the possibility of an interruption of or interference with international commerce does not exist in this action because the Clinic maintains a continuing business relationship with its United States agent. By the Clinic's extensive advertising efforts and the maintenance of the toll-free information number, the Clinic has manifested an intent to serve and to benefit from the United States market. Thus, sovereignty considerations weigh less heavily than if no United States-based relationships were established.

### Forum State's Interest in Adjudicating the Suit

California maintains a strong interest in providing an effective means of redress for its residents tortiously injured by commercial misappropriation. *Lugosi v. Universal Pictures,* 25 Cal.3d 813, 160 Cal.Rptr. 323, 603 P.2d 425 (1979). *See also Brand,* 796 F.2d at 1075–76 (interest of forum state much stronger when plaintiff is a resident).

California possesses a clear interest in protecting Sinatra as a California resident; thus, this case is different from the weak state interests present when nonresidents sue in California courts. *See, e.g., Asahi,* 107 S.Ct. at 1035; *Pacific Atlantic,* 758 F.2d at 1332. California's interest in providing effective redress for its residents supports the reasonableness of an exercise of jurisdiction in this case. *See Brand,* 796 F.2d at 1076 (discussing Ninth Circuit cases finding significant state interest because of injury to a forum citizen).

### Efficient Judicial Resolution

California is the most efficient forum to hear this case. The employees of the Clinic who supplied the information to the Enquirer are located in Switzerland, but they are the only foreign witnesses or parties involved in this suit. Van Vrooman, the agent of the Clinic, resides in Missouri. The National Enquirer is a Florida corporation whose reporters are located across the nation. Additionally, establishing that the statements were made is only one aspect of the evidence required to resolve the claims. Expert testimony as to the value of the Enquirer's article to the Clinic and as to the value of Sinatra's name in general is also required. Sinatra's career is centered in California and industry valuation experts are most likely located in the United States. Because the witnesses and evidence are primarily located in the United States, the United States is the most efficient forum for resolution of this dispute. *Pacific Atlantic,* 758 F.2d at 1331. Thus, efficiency concerns weigh in favor of the exercise of jurisdiction in the United States.

### Convenience and Effectiveness of Relief for Plaintiff

The maintenance of a suit outside of California would be inconvenient and costly for Sinatra, a California resident. Sinatra has not shown that the misappropriation cannot be effectively remedied in Missouri or Switzerland. *See Brand,* 796 F.2d at 1075 (plaintiffs made no showing that Arizona constituted a more convenient forum). Although location of the evidence and witnesses argues for the maintenance of this suit in the United States, this factor does

not necessarily weigh in favor of California as a forum without further proof by Sinatra.

*Existence of an Alternative Forum*

Sinatra has not met his burden to show that another forum is unavailable. *Pacific Atlantic*, 758 F.2d at 1331. However, no regulatory or policy interests are served by the exercise of jurisdiction in Missouri, making it unlikely that Missouri possesses a strong interest in providing a forum to resolve this suit. Moreover, "[w]hether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *Melcher*, 824 F.2d at 791.

After balancing the relative significance of each factor, *see Olsen*, 729 F.2d at 649, we have determined that the district court's exercise of jurisdiction over the Clinic was reasonable. The burden lay with the Clinic to rebut the presumption of reasonableness established by its actions taken to solicit and obtain business in California. This the Clinic did not do. Therefore, the Clinic, through its agent and promotional activities, should reasonably expect that its conduct would subject it to suit in the United States. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567.

III. *Sufficiency of the Evidence to Support the District Court's Factual Findings.*

The Clinic disputes some of the district court's findings. Findings of fact should not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a); *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The Clinic challenges the district court's finding that the Clinic specifically knew that Sinatra resided in Palm Springs, California. The Clinic states that this finding is not supported by any evidence in the record. However, the deposition testimony of Van Vrooman, concerning his activities with the Clinic and the Enquirer, was presented at trial. Evidence indicated that Van Vrooman acted as an agent of the Clinic in his conversations with the Enquirer, in his placement of advertising for the Clinic, in his handling of reservations and information about the Clinic to all United States clients, and in his attempts to contact Sinatra. Whatever the form of the transactions between the Clinic and Van Vrooman, when the substance of the relationship is reviewed, it is clear that Van Vrooman acted as an agent for the Clinic. Under California law, the knowledge of the agent is considered the knowledge of the principal. Cal.Civ.Code §§ 2332 (West 1985); *Trane Co. v. Gilbert*, 73 Cal.Rptr. 279, 267 Cal.App.2d 720 (1968).

In order to phone Sinatra, Van Vrooman had to know of Sinatra's residence. Van Vrooman's deposition admitted that he attempted to solicit Sinatra as a client during the call to Sinatra's agent. *Compare Cook Assocs., Inc. v. Colonial Broach & Mach. Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27, 31 (1973) ("[It] was defendant who initiated the business transaction in question by telephoning plaintiff....") *with Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332–33 (5th Cir.1982) (holding that a single defamatory telephone call to a person in Mississippi was sufficient to invoke personal jurisdiction because injury occurred in Mississippi and the defendant knew that the call was to Mississippi); *Murphy v. Erwin–Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir.1972) ("Where a defendant knowingly sends into a state a false statement intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state.")

Information concerning Sinatra was communicated to the Clinic by Van Vrooman. Moreover, the Clinic knew the nature of the Enquirer publication, its target readership, and the value of linking Sinatra's name to the Clinic's treatment in an Enquirer article. The district court considered evidence as to the nature of Van Vrooman's work on behalf of the Clinic, the method of payment for Van Vrooman's services, his actions taken to promote the Clinic's business in California and the extent of the Clinic's control over Van Vrooman's daily activities. Therefore, the district court's finding

of an agency relationship between Van Vrooman and the Clinic does not constitute clear error.

## CONCLUSION

The Clinic's statements made and actions taken through its agent establish the requisite minimum contacts with California, because the misappropriation was part of the Clinic's ongoing efforts to advertise and solicit business in California. Therefore, because minimum contacts have been found, the defendant must meet its burden of establishing a compelling case that the exercise of jurisdiction on the basis of these facts would be unreasonable. This the defendant has not done.

Considerations of sovereignty, while important, are not implicated here to the same extent as when dealing with a completely foreign operation. Therefore, the fact that the Clinic is an alien defendant does not operate to bar jurisdiction in this case. The Clinic actively solicits business in the United States and in California through its advertising. California has an overriding interest in safeguarding its citizens from the diminution in value of their names and likenesses, enhanced by California's status as the center of the entertainment industry. The harm suffered by Sinatra was economic, and thus was felt by him at his domicile and the headquarters of his business. On these facts we hold that the exercise of jurisdiction over the Clinic was reasonable. The decision of the district court is therefore AFFIRMED.