Catherine ZETA–JONES, an individual; CZ Properties, LLC, a Delaware limited liability company, Plaintiffs,

v.

THE SPICE HOUSE, a legal entity, form unknown; Wesglow Resources, Inc., a Nevada corporation; and Does 1 through 10, inclusive, Defendants.

No. CV 04–8743 CAS (RNBX).

United States District Court,
C.D. California,
Western Division.

May 18, 2005.

Jeffrey K. Riffer, Rod S. Berman, Jeffer, Mangels, Butler & Marmaro, Los Angeles, CA, for Defendant.

John H. Lavely, Jr., Yael E. Holtkamp, Lavely and Singer, Los Angeles, CA, for Plaintiff.

## ORDER DENYING DEFENDANT WESGLOW RESOURCES, INC.'S MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER TO NEVADA

SNYDER, District Judge.

### I. INTRODUCTION

This case arises out of the unauthorized use of a photograph of the actress Catherine Zeta–Jones ("the photograph") that was placed on the website of The Spice House, a topless cabaret in Reno, Nevada, in conjunction with sexually explicit images and adult entertainment links. Plaintiffs Zeta–Jones and CZ Properties, LLC, filed a suit in this Court on October 21, 2004, against defendants The Spice House, Wesglow Resources, Inc., and Does 1 through 10 (collectively, "defendants"), and a first amended complaint on April 13, 2005.[1] The first amended complaint asserts claims against defendants for violation of Cal. Civ.Code § 3344, misappropriation of the common law right of publicity, false designation or representation of origin in violation of the Lanham Act, trademark dilution, unfair competition and unfair

---

1. Wesglow Resources, Inc. ("Wesglow"), a Nevada corporation, owns and operates The Spice House as its sole business. Declaration of James Low ("Low Decl.") ¶ 3. Low is the president of Wesglow.

business practices, unjust enrichment, an accounting, constructive trust, copyright infringement, and defamation. On January 31, 2005, Wesglow filed a motion to dismiss for lack of personal jurisdiction and improper venue, or, alternatively, to transfer the action to Nevada. Oral argument took place on May 16, 2005, and the matter was taken under submission.

## II. LEGAL STANDARD

### A. *Personal Jurisdiction*

■ California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state law and federal due process are the same. *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir.1991). In order for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or limited. A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446–47, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977).

■ A court may assert limited jurisdiction over a cause of action that arises out of a defendant's forum-related activities. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir.1993). The test for limited personal jurisdiction has three parts:

(1) the defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;

(2) the claim must arise out of or result from the defendant's forum-related activities;

(3) exercise of jurisdiction must be reasonable.

*Id.; see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ The third prong, reasonableness, requires the Court to balance seven factors: (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Roth*, 942 F.2d at 623.

■ Where, as here, the court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995); *Doe v. Unocal Corp.*, 27 F.Supp.2d 1174, 1181 (C.D.Cal.1998), *aff'd*, 248 F.3d 915 (9th Cir. 2001). Plaintiffs' version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiffs' favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996).

## B. *Venue*

Under 28 U.S.C. § 1391(b),

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(c) further provides:

For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

Further, under 28 U.S.C. § 1400(a), "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found."

█ Even where venue is proper, 28 U.S.C. § 1404(a) provides that the district court may transfer an action to another district where the case might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice." The party seeking to transfer venue bears the burden of showing that convenience and justice require transfer. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 278–279 (9th Cir.1979). The decision to transfer lies within the sound discretion of the trial judge. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir.1988). In deciding a motion to transfer, the court must consider the three elements set forth in the statute: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *See Los Angeles Mem'l Coliseum Comm'n v. NFL*, 89 F.R.D. 497, 499 (C.D.Cal.1981). "These [statutory] factors break down to a number of relevant considerations: convenience of witnesses, judicial economy, relative ease of access to proof, and availability of compulsory process." *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F.Supp. 465, 466 (E.D.Cal.1994).

## III. DISCUSSION

### A. *Personal Jurisdiction*

Wesglow argues that it does not have the required "minimum contacts" with California to permit personal jurisdiction.[2] Wesglow further argues that adjudication of this action, which is based on "contacts

---

**2.** While the Court notes that this case presents both federal and state claims, the Ninth Circuit has consistently applied the same minimum contacts analysis to claims such as those asserted here. *See, e.g., Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1319–20 (9th Cir.1998).

that occurred entirely outside of this state," would be constitutionally unreasonable.

### 1. *General Jurisdiction*

Wesglow contends that it does not have "substantial" or "continuous and systematic" contacts with California that would meet the standard for general jurisdiction. Mot. at 7–8. Wesglow asserts that it is a Nevada corporation doing business exclusively in Reno, where all of its employees also reside. Low Decl. ¶¶ 3–5.[3] It further asserts that it does not conduct business, own property, hold assets, or advertise in California, and that it is not licensed to do business in California. *Id.* ¶¶ 5–6.

Plaintiffs respond that Wesglow maintains substantial, continuous, and systematic business connections with California. Opp. at 20. Plaintiffs assert that Wesglow "actively solicits customers and employees from California" through an interactive website,[4] and periodically pays a writer for the San Francisco-based magazine *Spectator* to write "fluff" pieces that essentially advertise the Spice House.[5] *Id.* at 20–21; *see* Declaration of Vanessa Lavely ("Vanessa Lavely Decl."), Exh. B; Low Depo. at 150: 16–151:15. Plaintiffs further assert that many of the Spice House's patrons are in fact from California. Opp. at 21.[6] Plaintiffs also point to a list of third-party vendors with whom Wesglow does "extensive" business, many of whom are either located in California or licensed to do business there. Opp. at 22; *see* Self

---

3. Plaintiffs points out that Low's statement regarding Wesglow's employees does not account for any of the dancers who perform at the Spice House. Low has stated that the dancers are independent contractors. *See* Deposition of Leonard James Low ("Low Depo.") at 23:21–24:22 (Exh. E to Declaration of Henry L. Self III ("Self Decl.")).

4. Wesglow contends that the website's interactive features, which primarily facilitated business transactions in Nevada, do not constitute "doing business" in California, and that in any event there is no evidence that anyone from California used these features. Reply at 9–10. Plaintiffs contend that Wesglow has failed to disclose any evidence of such users. Plaintiffs' Special Interrogatory No. 6 requested Wesglow to "[i]ndicate any communications between you and any persons in the state of California who submitted any inquiry, application or comment whatsoever through the website." Self Decl., Exh. A. Wesglow objected to this interrogatory as overbroad, burdensome, harassing, irrelevant, unlikely to lead to admissible evidence, and unlimited as to time, but responded: "Wesglow has on occasion received inquiries or comments through its web site, but does not maintain records of those communications or of the state(s) from which they originated and therefore lacks the information requested by this interrogatory." *Id.*

5. Wesglow disputes this assertion, noting that Low has testified that Wesglow does not pay, and has never paid, *Spectator* to publish articles about the Spice House, and that the *Spectator* writer in question, Dave Patrick, was paid to take photographs that were used on the Spice House website or given as gifts to Wesglow employees. Reply at 7–8 (citing Low Depo. 106:17–25, 151:4–152:1).

6. Plaintiffs hired an investigator to monitor the cars parked at the Spice House on a recent weekend, who observed that "over one in every four vehicles...displayed California license plates." Declaration of Earl Berryman ("Berryman Decl.") ¶ 3. Wesglow objects to this statement on the grounds that it is not relevant, lacks foundation, and constitutes improper opinion. Plaintiffs also cite the declaration of a former Spice House manager that, based on his experience checking ID's at the door, between roughly 25% and 50% of the Spice House's customers were California residents. Declaration of Gary Fly ("Fly Decl.") ¶ 2. Wesglow objects to this statement as irrelevant, vague, lacking foundation, and improper opinion. In light of the Court's decision to transfer this action to Nevada, the objections are moot.

Decl., Exh. C.[7]

Because, as discussed below, the Court has determined that this action is appropriate for transfer to Nevada, it does not decide the issue of personal jurisdiction. Nonetheless, the Court notes that general jurisdiction is an exacting standard, and Wesglow's contacts do not appear to meet it. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir.1986). Nor is the Court persuaded that any further discovery regarding Wesglow's business transactions or website users would establish substantial or continuous and systematic contacts with California.

### 2. *Specific Jurisdiction*

Wesglow argues that plaintiffs cannot satisfy the *Rano* test for establishing limited jurisdiction through forum-related activities. As to the first prong, Wesglow contends that it has not purposefully availed itself of the protection of California's laws. Mot. at 10. Wesglow asserts it does not do any business or advertise in California, and asserts that it does not sell advertising or receive any money for linking its website to any other website. Low Decl. ¶¶ 5–7. It further asserts that the mere operation of a website does not constitute purposeful availment of every jurisdiction from which the website may be

accessed by an Internet user. Mot. at 10–12 (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 415 (9th Cir.1997)).

As to the second prong of the *Rano* test, Wesglow contends that it has not engaged in any forum-related activities, and that any act by Wesglow that is relevant to plaintiffs' claims occurred in Nevada, not California. *Id.* at 12. As to the third and final prong, Wesglow contends that exercising personal jurisdiction over it in this forum would be unreasonable, because (1) Wesglow has not purposefully interjected itself into California; (2) it would be burdensome for Wesglow, a small Nevada-based company, and Low, who has Parkinson's disease, to appear in this Court; (3) Nevada is a "suitable and equally available alternative forum"; and (4) litigation in Nevada would not inconvenience plaintiffs nearly as much as litigation in California would burden defendants. *Id.* at 12–13; *see* Low Decl. ¶¶ 9–11.[8]

Plaintiffs respond that Wesglow purposefully availed itself of the privilege of conducting activities in California through its use of the photograph on its website. Opp. at 4. Plaintiffs cite the "effects test" established in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191 (9th Cir.1988). Under this test, specific jurisdiction in a tort action may

---

7. Wesglow notes that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." Reply at 4 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

8. In response, plaintiffs contend that Wesglow has purposefully availed itself of the forum; that Wesglow is not a small company, and Low's appearance in court is not necessary to this action; that conducting the case in Cali-

fornia would not infringe on the sovereignty of Nevada, which recognizes similar rights of publicity and provides similar protections against unfair business practices and deceptive advertising; that California, as the center of the entertainment industry, has a strong interest in providing redress for commercial misappropriations such as that at issue; that it is more judicially efficient, and more convenient for plaintiffs, to have the case proceed in this Court; and that Nevada courts are "presumably less familiar with applicable California law." Opp. at 15–20.

be appropriately exercised over a defendant "whose only 'contact' with the forum is the 'purposeful direction' of a foreign act having effect in the forum state." *Sinatra,* 854 F.2d at 1195. Plaintiffs assert that CZ Properties, which licenses Zeta–Jones' name and likeness, has its center of business in Los Angeles; that Zeta–Jones frequently renders acting services in Los Angeles; that many of the studios and production companies she has used and worked for are based in Los Angeles; and that Zeta–Jones' agents and representatives are located in Los Angeles and conduct their negotiations for her services and for the use of her name and likeness almost entirely in Los Angeles. Opp. at 6–9. Plaintiffs contend that Wesglow "deliberately utilized a highly recognizable photograph of a world-famous actress to attract attention to its business...knowing full well that its actions would cause harm to Plaintiffs in California, home to the heart of the motion picture and television industries." *Id.* at 9.[9]

Plaintiffs also argue that Wesglow's website, independent of the photograph, establishes purposeful availment under *Cybersell.* Plaintiffs assert that unlike the website in *Cybersell,* Wesglow's website is interactive and "facilitates extensive contacts and transactions" of a commercial nature between Wesglow and its California customers. *Id.* at 11–12. Plaintiffs note that a user of the website can complete online customer surveys; apply for employment at the Spice House; contact Wesglow with general inquiries; view live video broadcasts and video recordings from the Spice House; print coupons for admission to the Spice House; book reservations; obtain driving directions from California; and link to third party websites, "at least 39 of which are apparently based in or connected to California." *Id.* at 12–13; *see* Self Decl., Exh. B. Plaintiffs further argue that their claims satisfy the second element of the *Rano* test, because "but for Wesglow's contacts with California," *i.e.,* its website, "the claims Plaintiffs assert would not have arisen." *Id.* at 14 (citing *Ballard,* 65 F.3d at 1500). Finally, plaintiffs argue that jurisdiction is reasonable and that Wesglow has not carried its "heavy burden of rebutting the strong presumption in favor of jurisdiction." *Id.* at 14–15 (quoting *Ballard* ).[10]

Because the Court has determined that it is appropriate to transfer this action to Nevada, it does not decide the issue of specific jurisdiction. The Court notes only that based on the record before it, the threshold question of whether or not Wesglow purposefully availed itself of the privilege of conducting activities in California is a close one. While the Court is not persuaded that Wesglow's use of the photograph constitutes purposeful availment under the effects test, the website for the Spice House appears to be more interactive and to permit a greater degree of commercial activity than the "essentially

---

**9.** Wesglow responds that plaintiffs have not shown and cannot show any evidence of effects, pointing out that (1) the photograph was on the website for approximately two weeks, and promptly removed when Wesglow was contacted by plaintiffs' counsel; and (2) Zeta–Jones admitted in deposition that she did not believe she had lost acting roles and was unaware that she had lost any endorsement opportunities as a result of the Spice House website. Reply at 12–13. Wesglow argues that even if plaintiffs could show any

effects, there is no reason to believe that they would be suffered in California. Wesglow notes that unlike the plaintiffs in *Calder* and *Sinatra,* Zeta–Jones is not a citizen of California. *Id.* at 13–14. Wesglow further argues that its acts fail to satisfy the effects test because they were not "expressly aimed at the forum state." *Id.* at 14–15 (citing *Schwarzenegger,* 374 F.3d at 805).

**10.** *See supra* note 8.

passive" website in *Cybersell*. *See Cybersell*, 130 F.3d at 418; Judge William W. Schwarzer *et al.*, California Practice Guide: Federal Civil Procedure Before Trial § 3:208.80 (The Rutter Group 2005). However, in light of the Court's decision to transfer this case, it declines to order further discovery in connection with the use of the website.

### B. *Venue*

Wesglow argues that venue is improper because it is not subject to personal jurisdiction in California. Mot. at 14. In the alternative, Wesglow requests that the Court transfer this action to Nevada, because (1) plaintiffs could have brought suit in Nevada; (2) Nevada is, on balance, a more convenient forum for the parties; (3) Nevada is a more convenient forum for the witnesses, since the president of Wesglow and the independent contractor who maintains Wesglow's website, as well as any other Wesglow employees, reside in Nevada, and are therefore subject to compulsory process in Nevada; (4) documents and other physical evidence relating to Wesglow's alleged acts are in Nevada, and sources of proof of the events giving rise to plaintiffs' claims are much more likely to be located in Nevada than in California; (5) Nevada has a strong public interest in determining the rights of Nevada citizens. *Id.* at 16–18.

Plaintiffs respond that venue in this district is proper because it is the situs of the injury to plaintiffs, and hence "a judicial district in which a substantial part of the events or omission giving rise to the claim occurred," and because it is also, for reasons stated above, "a judicial district in which any defendant is subject to personal jurisdiction" at the time the action was commenced. Opp. at 23. Plaintiffs also argue that the action should not be transferred to Nevada under § 1404(a) because the convenience of the parties and witnesses and the interests of justice weigh against such a transfer. *Id.* Plaintiffs emphasize the importance of the plaintiff's choice of forum. *Id.* at 24. Plaintiffs contend that the only issue requiring witness testimony is damages, and that the relevant witnesses are plaintiffs' agents and business representatives, who are all located in Los Angeles. *Id.* at 24–25. Plaintiffs further contend that a Nevada federal court will likely be less versed in the applicable substantive California law, and that California, as "entertainment capital of the world," has a far stronger interest than Nevada in the adjudication of unauthorized use of famous names and likenesses. *Id.* at 25.

■ The Court notes that if it has personal jurisdiction over Wesglow, then venue is proper in this district under § 1391(c). However, even assuming that personal jurisdiction exists, there appears to be no reason why this action could not have been brought in Nevada, where defendants reside and where the wrongful act was apparently effected. The Ninth Circuit has identified a number of factors that may be considered in determining whether a motion to change venue from one district court to another should be granted pursuant to § 1404(a). These factors include the following:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of

proof. Additionally, the presence of a forum selection clause is a 'significant factor' in the court's § 1404(a) [analysis] . . . [and] the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir.2000) (footnotes omitted). *See also Decker Coal. Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986) (noting that *"forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion.").

■ The Court is mindful that deference should be accorded to plaintiffs' choice of forum, and that California has a significant interest in the rights that plaintiffs seek to enforce. Nonetheless, considerations of relative convenience to the parties and likely witnesses, availability of compulsory process, and ease of access to sources of proof dictate in favor of a transfer to Nevada. The Court notes that plaintiff Zeta–Jones is a citizen of the United Kingdom with principal residence in Bermuda, and has admitted that she owns residences elsewhere in the world. *See* Declaration of Jim D. Bauch ("Bauch Decl."), Exh. B (Deposition of Catherine Zeta–Jones), 28:20–24; Exh. C (Plaintiffs' Resp. to Defs.' Interrogatories), Nos. 12–13. The Court also notes that traveling to California may pose a greater inconvenience to Low because of his medical condition. Further, most of the relevant evidence and non-party witnesses on the issue of Wesglow's liability appear to be located in Nevada.[11] For example, Ken Cline, the former employee and present independent contractor who maintained Wesglow's website at all relevant times, resides in Reno. Low Decl. ¶ 8. Finally, there can be no doubt that a federal court in Nevada is well able to apply the relevant law govern-

ing this dispute. Accordingly, this case should be transferred to the District of Nevada.

## IV. CONCLUSION

For the aforementioned reasons, defendant Wesglow Resources, Inc.'s motion to dismiss is DENIED. However, the Court GRANTS the motion to transfer, and hereby transfers this case to the District of Nevada.

IT IS SO ORDERED.

---

11. The Court is unpersuaded by plaintiffs' suggestion that defendants' liability is so clear as to mandate focusing on evidence and witnesses relating to damages.