**NISSAN MOTOR CO., LTD.; Nissan North America, Inc., Plaintiffs,**

v.

**NISSAN COMPUTER CORPORATION, Defendant.**

**No. CV 99–12980 DDP (Mcx).**

United States District Court, C.D. California.

March 23, 2000.

Mark A. Flagel, Daniel Scott Schecter, Michael Jon Lawrence, David J. Schindler, Special Asst. AUSA, Ltham & Watkins, Los Angeles, CA, for plaintiffs.

Daniel Scott Schecter, Michael Jon Lawrence, Latham & Watkins, Los Angeles, CA, Neil D. Greenstein, Robert M. Vantress, San Jose, CA, for defendant.

## ORDER

**(1) DENYING DEFENDANT'S MOTION TO DISMISS; AND**

**(2) GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

[Motions filed on 12–10–99 and 2–4–00]

PREGERSON, District Judge.

The defendant's motion to dismiss and the plaintiffs' motion for a preliminary in-

junction came before the Court for oral argument on March 13, 2000. After reviewing and considering the materials submitted by the parties and hearing oral argument, the Court adopts the following order.

## I. Background

Plaintiff Nissan Motor Co., Ltd., is a large Japanese automaker. Its subsidiary, plaintiff Nissan North America, Inc., markets and distributes Nissan vehicles in the United States. Nissan Motor Co. owns, and Nissan North America is the exclusive licensee of, various registered trademarks using the word "Nissan" in connection with automobiles and other vehicles. (Rinek Decl. ¶¶ 4–5.) The first such trademark was registered in 1959. (*Id.*) Nissan North America also operates an Internet website at "www.nissan-usa.com."

The defendant, Nissan Computer Corporation, is a North Carolina company in the business of computer sales and services. The company was incorporated in 1991 by Uzi Nissan, its current president. (Nissan Decl. re: Prelim. Inj. ¶ 6.) Mr. Nissan has used his surname in connection with various businesses since 1980. (*Id.* ¶¶ 2–3.) Nissan is also a term in the Hebrew and Arabic languages. (*Id.* ¶ 2 & Ex. 38.) In 1995, the defendant registered a trademark for its Nissan Computer logo with the state of North Carolina. (*Id.* Ex. 45.)

The defendant registered the Internet domain names "nissan.com" and "nissan.net" in May 1994 and March 1996, respectively. (Compl.Exs.B, C.) For the next several years, the defendant operated websites at these addresses providing computer-related information and services. In July 1995, the plaintiffs sent the defendant a letter expressing "great concern" about use of the word Nissan in the defendant's domain name. (Nissan Decl. re: Prelim. Inj. ¶ 15 & Ex. 44.)

In August 1999, the defendant altered the content of its "nissan.com" website. (Davis Decl. Ex. E.) The website was captioned "nissan.com," and displayed a "Nissan Computer" logo that is allegedly con-fusingly similar to the plaintiffs' "Nissan" logo. (*Id.* Exs. E, G.) In addition, the website displayed banner advertisements and web links to various Internet search engines and merchandising companies. (*Id.* Ex. E.) These advertisements included links to automobile merchandisers, such as "cartrackers.com" and "1StopAuto.com;" links to auto-related portions of search engines; and links to topics such as "Car Quotes," "Auto Racing," and "Off Road." (*Id.* Ex. E; Schindler Decl. re: Prelim. Inj. Ex. E.)

In October 1999, the parties met to discuss the possible transfer of the nissan.com domain name. (Nissan Decl. re: Mot. Dism. ¶¶ 9–10; Davis Decl. ¶¶ 11–12.) In the course of these discussions, Mr. Nissan admittedly stated that he would not sell the domain name except for several million dollars, and made a proposal involving monthly payments in perpetuity. (Davis Decl. ¶ 11; Def.'s Opp'n re: Prelim. Inj. at 9–10.) Negotiations were unsuccessful.

On December 10, 1999, the plaintiffs filed a complaint in this Court alleging: (1) trademark dilution in violation of federal and state law; (2) trademark infringement; (3) domain name piracy; (4) false designation of origin; and (5) state law unfair competition. Also on December 10, the Court denied the plaintiffs' request for a temporary restraining order and scheduled the matter for a preliminary injunction hearing. The Court also approved limited expedited reciprocal discovery.

The plaintiffs' motion for a preliminary injunction came before the Court for oral argument on February 7, 2000. The plaintiffs seek an order, *inter alia*, enjoining the defendant from displaying advertisements and links on its websites and requiring the defendant to display a disclaimer and link to the plaintiffs' website. Alternatively, the plaintiffs seek an order restraining the defendant from using the nissan.com and nissan.net websites pending resolution of this action.

The defendant now moves to dismiss for lack of personal jurisdiction or, in the alternative, for improper venue. The Court deferred ruling on the preliminary injunction pending settlement discussions and briefing on the defendant's motion.

## II. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

### A. *Legal Standard*

■ A federal court's exercise of personal jurisdiction must comport both with the long-arm statute of the state in which it sits and with the constitutional requirement of due process. California's long-arm statute is coextensive with due process requirements. *See* Cal.Civ.Proc.Code § 410.10; *Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1286 (9th Cir.1977). Due process requires that the nonresident defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal citation omitted).

■ As discussed further below, a federal court may exercise either general or specific personal jurisdiction. The plaintiff bears the burden of establishing the necessary jurisdictional facts. *See Flynt Distrib. Co., Inc. v. Harvey,* 734 F.2d 1389, 1392 (9th Cir.1984). To survive a motion to dismiss for lack of personal jurisdiction, however, the plaintiff need only make a prima facie showing of jurisdiction. *See Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995). In determining whether the plaintiff has met this burden, the Court must take the allegations in the plaintiff's complaint as true and resolve disputed jurisdictional facts in the plaintiff's favor. *See American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588–89 (9th Cir.1996).

### B. *General Personal Jurisdiction*

■ General personal jurisdiction may be exercised as to any cause of action, if the defendant is domiciled in the forum state or if its activities there are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ In this case, the plaintiffs do not argue that the Court has general personal jurisdiction over the defendant. (Opp'n at 12 n. 5.) Moreover, there is no evidence that the defendant has "substantial" or "continuous and systematic" contacts with California. The defendant has offices and employees only in North Carolina, offers only local Internet access, and apparently limits its sales and advertising to the East Coast. (Nissan Decl. re: Mot. Dism. ¶¶ 4–5.) Accordingly, the Court finds that the plaintiffs have not established a basis for general personal jurisdiction over the defendant.

### C. *Specific Personal Jurisdiction*

■ Specific personal jurisdiction may be exercised when the "nature and quality" of the defendant's contacts with the forum state are significant in relation to the specific cause of action. *Data Disc,* 557 F.2d at 1287. Specific jurisdiction requires a showing that: (1) the nonresident defendant purposefully directed its activities toward the forum state; (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities; and (3) the forum's exercise of personal jurisdiction is reasonable. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987).

#### 1. *Purposeful availment*

■ To establish purposeful availment, the plaintiffs must show that the defendant has deliberately engaged in "significant activities" within a state or has created "con-

tinuing obligations" between himself and the forum. *See Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir.1990) (quoting *Burger King*, 471 U.S. at 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528). In the Internet context, alleged trademark infringement in connection with the domain name of a passive website does not itself subject the defendant to personal jurisdiction in the plaintiff's forum state. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir.1997). Rather, there must be " 'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *See id.* at 418.

### a. Transaction of Business

 The plaintiffs contend that the defendant's transaction of business in California establishes purposeful availment. The general rule is that merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident defendant. *See Burger King*, 471 U.S. at 479, 105 S.Ct. 2174; *Ziegler*, 64 F.3d at 473. However, solicitation of business in the forum state may constitute purposeful availment "if that solicitation results in contract negotiations or the transaction of business." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir.1990), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

 The plaintiffs submit evidence that the defendant contracted with five companies based in California: Asimba, Inc.; Ask Jeeves, Inc.; CNET, Inc.; GoTo.com, Inc.; and RemarQ Communities, Inc. (Schindler Decl. re: Mot. Dism. Exs. 1–5.) The defendant displayed advertising banners and links from these companies on the nissan.com website, and received a commission each time a visitor clicked through to an advertiser's website. According to the plaintiffs, more than 90,-000 customers clicked through from the nissan.com website to the websites of the California advertisers between August and December 1999. (*Id.* ¶ 19.) In addition,

the plaintiffs submit evidence that the defendant directly solicited auto-related advertising business from another California-based company, Autoweb.com, although this solicitation did not result in the transaction of business. (*Id.* Exs. 15–16.)

The defendant responds that it arranged the advertising on its website through a Massachusetts-based intermediary, Be Free, and that it never knowingly reached out to California companies. The Court rejects this argument. The plaintiffs submit evidence that the defendant contracted directly with the five California-based advertisers. Specifically, by enrolling with advertisers on Be Free's website, the defendant agreed to be bound by contracts with those advertisers. (Schindler Decl. re: Mot. Dism. Exs. 6–12; Greenstein Decl. in Reply to Mot. Dism., Ex. 85 at 21.) In each case, the defendant also received e-mail acceptance notices directly from the California advertisers. (*Id.* Exs. 18–24.) Finally, the plaintiffs submit evidence that each of the defendant's contracts with the California advertisers provided that the contract would be governed by California law. (*Id.* Exs. 8–12.) This factor alone is sufficient to establish purposeful availment. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir.1986).

The Court finds that the defendant purposefully directed its activity in a substantial way toward California. Accordingly, the plaintiffs have met their burden to show purposeful availment.

### b. Effects Doctrine

 The plaintiffs also argue that personal jurisdiction is proper under the "effects doctrine." Under that doctrine, personal jurisdiction may also be based on "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir.1993) (interpreting *Calder v. Jones*,

465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). In the Internet context, the Ninth Circuit has found personal jurisdiction where the defendant deliberately registered the domain name for the purposes of extortion and with the effect of injuring the plaintiff in the forum state. *See Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir.1998).

Here, as in *Panavision,* the defendant's alleged activities satisfy the effects test. The defendant is not alleged to have deliberately registered domain names for purposes of extortion. However, the evidence supports a finding that the defendant intentionally changed the content of its website in August 1999 to exploit the plaintiffs' goodwill by profiting from consumer confusion. The brunt of the harm was suffered in the forum state because Nissan North America, Inc., the exclusive licensee of the Nissan trademarks, is based in Gardena, California. (Compl. ¶ 2; Opp'n at 8 n. 17.)

The defendant argues that it is not subject to personal jurisdiction because it merely operated a passive website. The defendant further argues that, under the Court's analysis, a passive Internet infringer could be sued anywhere in the country. The Court rejects this characterization of the defendant's activity. Although the defendant did not directly sell goods to consumers on its websites, it derived advertising revenue by intentionally exploiting consumer confusion. This intentional exploitation of consumer confusion supplies the "something more" indicating that the defendant deliberately and substantially directed its activity toward the forum state.

Citing *Core–Vent Corp.,* 11 F.3d at 1487, the defendant also argues that a corporation does not suffer harm in a particular location. However, the Ninth Circuit held in *Panavision* that a corporation may suffer harm in its principal place of business. *See Panavision,* 141 F.3d at 1322 n. 2. The defendant also argues that a trademark licensee cannot bring an infringement suit. However, this argument does not address whether the plaintiffs suffered harm in California. The Ninth Circuit has approved a finding of personal jurisdiction in a trademark infringement suit, where the plaintiff used the trademark in the forum state. *See id.* at 1322 (approving analysis in *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership,* 34 F.3d 410 (7th Cir.1994)).

The Court finds that the defendant's alleged conduct satisfies the effects test. Accordingly, personal jurisdiction is also proper on that ground.

### 2. *Forum–Related Activities*

The plaintiffs must also establish that their claims arise out of or result from the defendant's forum-related activities. This element is established if the plaintiffs would not have been injured "but for" the defendant's activities. *See Panavision,* 141 F.3d at 1322; *Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir.1995). Activities that are "too attenuated" do not satisfy the but-for test. *Doe v. American Nat'l Red Cross,* 112 F.3d 1048, 1051 (9th Cir.1997).

Here, the plaintiffs' trademark infringement and dilution claims arise out of the defendant's California-related activities. The defendant's contracts with California-based advertisers allegedly resulted in the diversion of the plaintiffs' potential customers to other websites and the exploitation of the plaintiffs' goodwill. In addition, under the effects test, the defendant's intentional exploitation of the plaintiffs' goodwill and diversion of the plaintiffs' potential customers had the effect of injuring Nissan North America in California. But for the defendant's conduct, this injury would not have occurred. *See Panavision,* 141 F.3d at 1322. Accordingly, the Court finds that this prong is satisfied.

### 3. *Reasonableness*

An otherwise valid exercise of personal jurisdiction is presumed to be reasonable. *See Ballard,* 65 F.3d at 1500. Accordingly, once a court finds purposeful availment, it is the defendant's burden to

"present a compelling case" that the exercise of jurisdiction would be unreasonable. *Id.* (citing *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174). This determination requires the balancing of seven factors: (1) the extent of purposeful interjection; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See Gray & Co.,* 913 F.2d at 761.

■■■ The defendant has not carried its burden to show unreasonableness. The first factor, purposeful interjection, is analogous to that of purposeful availment. *See Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1199 (9th Cir.1988). As discussed above, the defendant's activities in California satisfy this requirement. The other factors do not weigh strongly in favor of either side. Although other forums are available, advances in communication and transportation have reduced the burden of cross-country litigation. *See id.* Moreover, the defendant's burden of litigating in this forum must be weighed against the plaintiffs' convenience. Neither forum provides any marked efficiency over the other. Any conflicting sovereignty interests are accommodated through choice-of-law rules. *See Gray & Co.,* 913 F.2d at 761. Finally, California has a strong interest in protecting its citizens from trademark infringement and consumer confusion.

Upon balancing these factors, the Court finds that an exercise of personal jurisdiction over the defendant would be reasonable.

### D. *Conclusion*

The Court finds that the plaintiffs have made a prima facie showing of specific personal jurisdiction over the defendant. Accordingly, the Court denies the defendant's motion to dismiss.

## III. Defendant's Motion to Dismiss for Lack of Venue

### A. *Legal Standard*

In a federal question case, venue is proper in a judicial district in which: (1) any defendant resides, (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or (3) the defendants are subject to personal jurisdiction, if there is no other district in which the action could be brought. 28 U.S.C. § 1391(b). If a state has more than one judicial district, a defendant corporation is deemed to reside in any district "within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c).

■■■ If venue is improper, the court must either dismiss or, in the interests of justice, transfer the case to a district having proper venue. *See* 28 U.S.C. § 1406(a). Although there is some disagreement, most courts hold that the plaintiff bears the burden of establishing proper venue. *See* Schwarzer et al., *supra,* ¶ 4:251 at 4–66 (arguing that placing the burden on plaintiff is the better view). A prima facie showing of proper venue is sufficient to defeat a motion to dismiss. *See id.,* ¶ 9:139.1 at 9–34.

### B. *Discussion*

■■■ The defendant argues that venue is improper because it has insufficient contacts with the Central District. Of the five California-based companies that advertised on the defendant's website, only one—GoTo.com—is allegedly based in this district. It is not clear whether the defendant's transaction of business with GoTo.com is itself sufficient to support specific personal jurisdiction. However, the principal place of business of plaintiff Nissan North America, Inc., is Gardena, California. (Compl.¶ 2.) Thus, although the parties do not raise the issue, personal jurisdiction in this district would be proper

under the effects doctrine. Accordingly, the Court denies the defendant's motion to dismiss for improper venue.

## IV. Plaintiffs' Motion for Preliminary Injunction

### A. *Legal Standard*

To obtain a preliminary injunction, the moving party must show either: (1) a combination of probable success on the merits and the possibility of irreparable injury without the injunction; or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party. *See Dr. Seuss Enters. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1397 n. 1 (9th Cir.1997). A serious question is one to which the moving party has a "fair chance of success on the merits." *Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1421 (9th Cir.1984). These standards " 'are not separate tests but the outer reaches of a single continuum.' " *International Jensen, Inc. v. Metrosound U.S.A.,* 4 F.3d 819, 822 (9th Cir.1993) (citation omitted).

### B. *Likelihood of Success on the Merits*

The plaintiffs argue that they are likely to succeed on the merits on all of their claims. However, the Court need only address the plaintiffs' claim of trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1). To prevail on this claim, the plaintiffs must show that: (1) the plaintiffs have a valid, protectable trademark interest in their "Nissan" mark; and (2) the defendant is using a confusingly similar mark. *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1046 (9th Cir.1999).

### 1. *Validity of Plaintiffs' Mark*

The Nissan mark was first registered by plaintiff Nissan Motor Co. in 1959, and has been used continuously since. (Rinek Decl. ¶ 4.) The mark has become incontestable, and therefore immune from attack on certain grounds. *See* 15 U.S.C. §§ 1115(b), 1065; *Park 'N Fly,*

*Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 205, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). Accordingly, the Court finds that the plaintiffs have a valid, protectable trademark interest in the "Nissan" mark.

The defendant argues that Mr. Nissan has been using his surname in connection with various businesses since the 1980s. Although there is no absolute right to use one's name as a trademark, the Ninth Circuit has recognized a "judicial reluctance to enjoin use of a personal name." *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1288 (9th Cir.1992). However, use of an infringing name may still be limited by a carefully tailored injunction. *See id.*

Incontestable status also does not preclude the defendant from disputing the strength of the mark. *See McCarthy on Trademarks* § 32:155 at 32–221 (1999). This issue is addressed further below, in the discussion of likelihood of confusion.

### 2. *Likelihood of Confusion*

The central issue in a trademark infringement suit is the likelihood of consumer confusion. *See, e.g., Dr. Seuss Enters.,* 109 F.3d at 1403–04. In the Ninth Circuit, a court determines the likelihood of consumer confusion by considering the following set of factors: (1) the strength of the plaintiff's mark; (2) the relatedness or proximity of the parties' goods or services; (3) the similarity of the parties' marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *See Brookfield,* 174 F.3d at 1054 (citing *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir. 1979)). This set of factors is not exhaustive, and should not be applied rigidly in the Internet context. *See id.*

One type of actionable consumer confusion is known as "initial interest" confusion. *See Interstellar Starship Servs. Ltd.*

*v. Epix Inc.,* 184 F.3d 1107, 1110 (9th Cir.1999); *Brookfield,* 174 F.3d at 1062. The Ninth Circuit has explicitly recognized that an infringement claim may be based on "the use of another's trademark in a manner calculated to capture initial consumer attention," even if the confusion does not result in a sale. *See Brookfield,* 174 F.3d at 1062 (internal citations omitted).

In *Brookfield,* the Ninth Circuit applied this doctrine to enjoin the confusing use of Internet metatags.[1] *See id.* at 1062–63. The court found that, by using a trademark in such a way as to divert consumers to its website, an infringer "improperly benefits from the goodwill that [the plaintiff] developed in its mark." *Id.* at 1062. To prevail on such a theory, the plaintiff need not demonstrate that the consumer was confused as to the source of the products or even that the consumer ultimately made a purchase. *See id.* at 1062–63.

### a. *Strength of Plaintiffs' Mark*

The parties dispute the strength of the plaintiffs' mark. The defendant argues that the Nissan mark is inherently weak because it is a surname and a word in Hebrew and Arabic. Personal names used as trademarks are generally not inherently distinctive, but may be treated as strong marks upon a showing of secondary meaning. *See E. & J. Gallo Winery,* 967 F.2d at 1291.

Here, the plaintiffs submit evidence that the Nissan mark has been in continuous use in the automobile industry since 1959. (Rinek Decl. ¶ 6.) The plaintiffs have also extensively promoted the mark, spending about $400 million on advertising and promotions in the United States in 1999. *(Id.* ¶ 6.) The plaintiffs also submit evidence of strong consumer recognition of the mark. A 1988 newspaper article listed Nissan as one of the top 200 consumer-identified brands in the United States. (Lawrence Decl. Ex. F.) Moreover, a recent survey shows that 92% of consumers would expect

to find a car company at the nissan.com and nissan.net websites. (Schindler Decl. re: Prelim. Inj. Ex. C.) Based on this evidence, the Court finds that the Nissan mark has secondary meaning and should be treated as a strong mark.

The defendant argues that the Nissan mark is diluted due to brand fragmentation, extensive third-party usage, and poor trademark enforcement. *(See, e.g.,* Vantress Decl. Exs. 54–55.) Even if relevant to the strength of the mark, these factors are not dispositive. *See, e.g., Eclipse Assocs. Ltd v. Data General Corp.,* 894 F.2d 1114, 1119 (9th Cir.1990) (finding that evidence of other unrelated infringers is irrelevant to trademark infringement claim). Given the substantial evidence of secondary meaning, the Court finds that the strength of the Nissan mark weighs in the plaintiffs' favor.

### b. *Similarity of Marks*

The marks at issue in this case are the plaintiffs' "Nissan" mark and the defendant's "nissan.com" and "nissan.net" Internet domain names. The only differences between these marks are the domain name suffixes, which merely signify the domain level. The marks are thus, "for all intents and purposes, identical in terms of sight, sound, and meaning." *Brookfield,* 174 F.3d at 1055. Accordingly, this factor weighs in the plaintiffs' favor.

### c. *Proximity of Goods*

The use of similar marks to promote similar products weighs heavily in favor of finding a likelihood of confusion. *See id.* at 1056. If the public would associate the defendant's products with the plaintiffs, it is not dispositive that the parties' principal lines of business are different. *See id.*

The defendant argues that the parties' principal lines of business are different. The defendant contends that it principally sells computers and Internet services,

---

**1.** Metatags are a form of HTML code, used by Internet search engines to match websites to the search terms entered by the web user. *See Brookfield,* 174 F.3d at 1061 n. 23.

while the plaintiffs principally sell cars and other vehicles. However, this case is not suited to a traditional proximity-of-goods analysis. Starting in August 1999, the defendant's nissan.com website primarily promoted automobile-related products and services, through third-party advertisements and web links, rather than the defendant's own computer products. More than 90% of the defendant's website advertising revenue is automobile-related. (Schindler Decl. re: Prelim. Inj. Ex. G.) Whether or not a visitor to the defendant's website ultimately makes an automobile purchase from an advertiser, the defendant profits from the visitor's initial interest confusion. By posting automobile-related links and advertisements, the defendant derives advertising revenue due to the diversion of a consumer's initial interest in Nissan vehicles. As in *Brookfield,* the defendant is improperly appropriating the plaintiffs' goodwill. Thus, in regards to its Internet-related activity, the defendant's "product" is the exploitation of customer confusion. Accordingly, this factor weighs in favor of the plaintiffs.

### d. *Overlapping Marketing Channels*

Both parties also use the Internet as a marketing and advertising channel. This factor further exacerbates the likelihood of confusion, and therefore weighs in the plaintiffs' favor. *See Brookfield,* 174 F.3d at 1057.

### e. *Actual Confusion*

Another important factor in this case is actual consumer confusion. The plaintiffs submit evidence that consumers send e-mail inquiries about Nissan vehicles to the defendant at "info@nissan.com," and frequently search for information on Nissan vehicles at the nissan.com website. (Schindler Decl. re: Prelim. Inj. Exs. H, I.)

The plaintiffs also submit strong evidence of initial interest confusion. Survey evidence shows that 92% of consumers would expect to find information on cars at the nissan.com and nissan.net websites. (*Id.* Ex. C.) The plaintiffs also submit evi-

dence that the majority of visitors arrive at nissan.com by directly typing in the domain name or by launching from another car-related website. (*Id.* Ex. K.) Accordingly, this factor weighs heavily in the plaintiffs' favor.

### f. *Other Factors*

The factors discussed above all weigh in favor of finding a likelihood of confusion. On balance, the remaining *Sleekcraft* factors do not alter this conclusion. As to the intent factor, there is no evidence that the defendant registered the "nissan.com" and "nissan.net" domain names with the intent to confuse consumers. However, an intent to confuse may be inferred from the defendant's alteration of its nissan.com website in August 1999 to display automobile-related information and a confusingly similar logo. Finally, the remaining two factors, degree of care exercised by the consumer and the likelihood of expansion of product lines, are not important in the context of this case.

The Court finds that the plaintiffs have demonstrated both a valid mark and a likelihood of confusion. Accordingly, the Court finds that the plaintiffs have demonstrated a likelihood of success on the merits of their trademark infringement claim.

### C. *Balance of Hardships*

As the plaintiffs have demonstrated a likelihood of success on their trademark infringement claim, irreparable injury is presumed. *See* Schwarzer et al., *supra,* ¶ 13:44 at 13–14 (1999). Here, irreparable injury is also apparent because the defendant is trading on the plaintiffs' goodwill and diverting potential Nissan car customers to other websites.

The defendant argues that the presumption of irreparable harm is rebutted by the plaintiffs' delay in seeking injunctive relief. The Court rejects this argument. The defendant notes that Mr. Nissan has used his surname in business since the 1980s. The defendant also notes that it began using the nissan.com website in 1994, and

received a letter from the plaintiffs regarding the website in July 1995. However, the plaintiffs respond that the nissan.com website was altered in August 1999 to maximize and exploit consumer confusion. The plaintiffs argue that they opened settlement discussions soon after discovering these changes in October 1999.

The Court finds that the plaintiffs sought timely relief. Accordingly, the defendant has failed to rebut the presumption of irreparable harm.

### D. *Terms of the Injunction*

■■■ The remaining issue is the scope of the injunction. An injunction limiting the use of an infringing personal name should be "carefully tailored to balance the interest in using one's name against the interest in avoiding public confusion." *E. & J. Gallo Winery*, 967 F.2d at 1288.

The plaintiffs seek an order requiring the defendant to: (1) refrain from offering advertisements, promotions or Internet links on the nissan.com and nissan.net websites; (2) cease providing Internet service on these websites; (3) post a disclaimer informing visitors that these websites are not affiliated with the plaintiffs; (4) include a link to the plaintiffs' website; and (5) cease using the metatag "Nissan" in connection with the websites. Alternatively, the plaintiffs request an order requiring the defendant to transfer the nissan.com and nissan.net websites to the plaintiffs. The defendant does not directly address the terms of the requested injunction.

■■■ The Court finds that the likelihood of confusion may be mitigated by less restrictive measures than proposed by the plaintiffs. To reduce confusion, the defendant's websites must prominently display, in the upper portion of the first page of the websites: (1) a caption or statement identifying the websites as affiliated with Nissan Computer Corporation; and (2) a statement disclaiming affiliation with the plaintiffs and identifying the location of Nissan North America's website. The disclaimer should state something substantially similar to the following: "This website is not affiliated with the Japanese automaker, Nissan Motor Co., or with its North American subsidiary, Nissan North America, Inc. Nissan North America's website is located at www.nissanusa.com." In addition, the defendant must not display any automobile-related information, advertising, or web links, including links to automobile-related portions of Internet search engines.

The Court finds that the above measures will adequately address consumer confusion. Accordingly, a link to the plaintiffs' website is not required. The defendant may also display non-automobile-related third-party advertisements and links on its websites. Finally, the defendant may continue to conduct and advertise its own computer business, including the provision of Internet services, and may continue to use the word "Nissan" as a metatag.

## V. Conclusion

The Court denies the defendant's motion to dismiss for lack of personal jurisdiction and improper venue, and grants the plaintiffs' motion for a preliminary injunction.

IT IS HEREBY ORDERED that the defendant shall immediately, and for the pendency of this action:

(1) post a prominent caption, in the upper portion of the first web page of the nissan.com and nissan.net websites, identifying these websites as affiliated with Nissan Computer Corporation;

(2) post a prominent disclaimer, in the upper portion of the first web page of the nissan.com and nissan.net websites, informing visitors that the nissan.com and nissan.net websites are not affiliated with the plaintiffs and identifying the location of Nissan North America's website; and

(3) refrain from displaying automobile-related information, advertisements, promotions, or Internet links on the nissan.com and nissan.net websites, except as set forth above.

IT IS FURTHER ORDERED that this Order is granted on the condition that the plaintiffs file a bond in the sum of $100,000 within five business days of the entry of this Order to make good such damages, not to exceed said sum, as may be suffered or sustained by defendant if it is subsequently found to be wrongfully restrained hereby.

IT IS SO ORDERED.